UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

REID K. O'CONNELL,                    :
                                      :
        Plaintiff                     :
                                      :
v.                                    :    No. 3:03CV0845 (DJS)
                                      :
KATHERINE KENNEY, RETIREMENT          :
PLAN FOR EMPLOYEES OF HARTFORD        :
HOSPITAL, BARBARA J. MURPHY,          :
and CONNECTICUT CHILDREN'S            :
MEDICAL CENTER CASH BALANCE           :
RETIREMENT PLAN,                      :
                                      :
        Defendants                    :

### MEMORANDUM OF DECISION

Plaintiff Reid K. O'Connell ("O'Connell"), brings this action against Hartford Hospital and the Retirement Plan for Employees of Hartford Hospital ("HH plan"), and the Connecticut Children's Medical Center ("CCMC") and the Connecticut Children's Medical Center Cash Balance Retirement Plan ("CCMC plan"), based upon the Employee Retirement Income Security Act ("ERISA"). Plaintiff (dkt. # 57), Hartford Hospital (dkt. # 47), and CMCC (dkt. # 52) have filed motions for summary judgment on all counts and claims set forth in the complaint. For the reasons set forth herein, defendants' motions (dkt. #s 47 & 52) are **GRANTED** and plaintiff's motion (dkt. # 57) is **DENIED.**

### I. FACTS

Reid O'Connell ("O'Connell") is married to Gail O'Connell and was designated as a beneficiary of Gail O'Connell's

retirement benefits.  Gail O'Connell was employed by Hartford Hospital and CCMC, and after retiring at age fifty-five in July of 2001, received a lump-sum payment of her pension benefit from both the HH plan and the CMCC plan.  O'Connell alleges that both plans did not calculate the lump-sum benefit pursuant to the applicable terms of the plans and seeks to recover the difference from what he believes is owed and what the plans actually paid.

Gail O'Connell began working at Hartford Hospital in June of 1967 as a nurse in the pediatric department.  She continued to do so until March 30, 1996 when she ceased employment with Hartford Hospital and, by way of a transfer pursuant to the Connecticut Health System ("CHS") Transfer Policy, began working in the pediatric department of CCMC as an advanced practitioner nurse. Gail O'Connell continued employment at CCMC until she took early retirement on July 21, 2001 at age fifty-five.  Because of her transfer between Hartford Hospital and CMCC, Gail O'Connell was eligible to receive benefits pursuant to both the HH plan and the CCMC plan upon her retirement.  Both the HH plan and the CCMC plans paid Gail O'Connell benefits in the form of two lump-sums in September of 2001.

After Gail O'Connell transferred from Hartford Hospital to CCMC, both the HH plan and the CCMC plan underwent fundamental changes.  Effective January 1, 1999 the CCMC plan converted to a

cash balance plan.[1]  Gail O'Connell met the CCMC plan's
eligibility criteria for a "Grandfathered Participant," (dkt. #
54 Ex. B, § 2.24 at 14), which entitled her to receive the
greater of the benefit calculated pursuant to either the 1994
version or 1999 version of the CCMC plan.  Also effective January
1, 1999, Hartford Hospital converted the HH plan to a cash
balance plan.  By its terms, the HH plan also deemed her a
"Grandfathered Participant" (dkt. # 50 Ex. 2, § 1.23 at 6) such
that she could choose the greater benefit under either the 1990
or 1999 version of the HH plan.  Under the terms of both the CCMC
plan and the HH plan, Gail O'Connell could choose to receive her
benefit as either an annuity or a lump-sum payment.

O'Connell claims that the amounts disbursed to his wife
under the terms of each plan were lower than that which she was
entitled to receive under the terms of each plan.  Specifically,
with respect to the HH plan, O'Connell claims that his wife was
entitled to receive a lump-sum disbursement reflecting an early
retirement subsidy.  Under the 1990 version of the HH plan, a
retirement benefit was paid in the form of a life annuity, which

---

[1] This conversion changed the method of calculating and
accounting for annuity benefits by basing the amount of the
annuity upon a hypothetical individual account balance.  This
hypothetical balance is derived from "credits" reflecting a
predetermined percentage of the employee's salary ("benefit
credit") and interest at a predetermined rate ("interest
credit").  Thus, the cash balance plan resembles a defined
contribution plan, but remains a defined benefit plan.

is monthly sum payable to the participant for the duration of her life beginning at age sixty-five. Under the terms of the 1990 HH plan, the amount of the monthly life annuity payment must be reduced if the participant elects to receive the benefit before attaining age sixty-five. The early retirement subsidy is a reduction of the monthly life annuity payment at a rate more favorable to the participant than the ordinarily applicable rate. The lump-sum disbursed to Gail O'Connell from the HH plan was not enhanced by the early retirement subsidy. Likewise, the lump-sum disbursement from the CCMC plan was not enhanced by the early retirement subsidy. O'Connell claims that, had the early retirement subsidy applied to the lump-sum disbursements, Gail O'Connell would have received $386,300 from the HH plan, which is $121,501.91 greater than the $264,798.09 she actually received and would have received $92,600 from the CCMC, which is $28,956.36 greater than the $63,643.64 she actually received.

## II. DISCUSSION

O'Connell's claims are properly construed as an attempt to recover benefits due pursuant to Section 502 of ERISA. See 29 U.S.C. § 1132(a)(1)(B). Section 502 of ERISA provides, in pertinent part, that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

-4-

under the terms of the plan. . . ."  29 U.S.C. § 1132(a)(1)(B).
Defendants deny that any benefits are owed to O'Connell.

A.  STANDARD

A motion for summary judgment may be granted "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(c).  Summary judgment is appropriate if, after
discovery, the nonmoving party "has failed to make a sufficient
showing on an essential element of [its] case with respect to
which [it] has the burden of proof."  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to
demonstrate the absence of any material factual issue genuinely
in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l
Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v.
Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir.
1975)).  A dispute concerning a material fact is genuine "'if
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist.,
963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all
inferences and ambiguities in a light most favorable to the
nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d

Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Id.

    B. CALCULATION OF GAIL O'CONNELL'S BENEFITS

O'Connell claims that the early retirement subsidy should have been applied to lump-sum benefit calculations conducted for Gail O'Connell.  Defendants, however, have shown that Gail O'Connell was not entitled to receive a lump-sum disbursement with the benefit of the early retirement subsidy.

    1. HH Plan

The terms of both the 1990 version and 1999 version of the HH plan do not permit Gail O'Connell to receive a lump-sum disbursement with the early retirement subsidy.  Upon her retirement in 2001, the HH plan offered Gail O'Connell her retirement benefit in three forms: (1) a lump-sum distribution; (2) a single life annuity with the early retirement subsidy; and (3) a single life annuity with the early retirement subsidy and without COLA adjustments.  (See Dkt. # 49 Ex. 1).  These were the only possible options pursuant to either the 1990 version or 1999 version of the HH plan for two reasons.

First, pursuant to the 1990 version of the HH plan, only an "active employee in [Hartford Hospital's] medical laboratory department" (dkt. # 50 Ex. 3, ¶ (2)(d)) who was employed on September 30, 1998 could elect to receive a lump-sum distribution with the early retirement subsidy.  (See Dkt. # 50 Ex. 3, ¶

-6-

(2)(d) (amending Section 5.14 of the 1990 HH plan to allow a medical laboratory employee to receive a lump-sum distribution) & (3) (amending Section 8.04 of the 1990 HH plan to allow lump-sum distributions to medical laboratory employees)).  This provision was a unique feature of the 1990 HH plan, which otherwise provided that benefits would be paid to participants in the form of a life annuity.  The option to receive the benefit as a lump-sum was previously unavailable to participants who were entitled to the equivalent of more than $3500 in benefits upon conversion from a life annuity to a lump-sum.  Therefore, because Gail O'Connell was not a medical laboratory employee, she was not entitled to receive a lump-sum distribution including the early retirement subsidy under the 1990 HH plan.

Second, the 1999 HH plan broadened the scope of employees who could receive the early retirement subsidy but provided that the participant eligible to do so could only receive the subsidy in the form of a life annuity.  Under the 1999 HH plan, a "Grandfathered Participant," irrespective of whether the participant worked in the Hartford Hospital medical laboratory, could realize the early retirement subsidy only if the participant selected to receive her benefit in the form of a life annuity.  Section 7.11 of the 1999 HH plan provides the following:

> Calculation of Early Retirement Benefit.  A Participant who has elected to receive an Early Retirement Benefit,

-7-

> pursuant to Section 4.03, shall receive an Early
> Retirement Benefit, payable commencing on his or her
> applicable Early Retirement Date, which shall be an
> amount payable monthly for life equal to his or her
> Normal Retirement Income *reduced by one-third percent
> (1/3%) for each month by which his or her Early
> Retirement Date precedes his or her Normal Retirement
> Date.*

(Dkt. # 50 Ex. 2, § 7.11 at 35) (italics added).  The italicized portion of the preceding passage is the early retirement subsidy, which pursuant to the express terms of Section 7.11, is available to participants selecting to receive their benefit in the form of a life annuity.  In contrast, a participant's election to receive her benefit in the form of a lump-sum distribution receives her "Accrued Benefit," which, for a "Grandfathered Participant" such as Gail O'Connell, is "the Actuarial Equivalent of his or her Normal Retirement Benefit . . . at any given point in time, calculated in accordance with Article 7, as in effect at that point in time, expressed as a lump sum amount."  (Dkt. # 50 Ex. 2, § 1.02(c)).  The "Actuarial Equivalent" of Gail O'Connell's "Normal Retirement Benefit"[2] is governed by Schedule A of the 1999 HH plan, which provides that "[t]he Actuarial Equivalent for the calculation of a lump sum distribution shall not include any Early Retirement subsidy under Section 7.11 nor any cost of living adjustment for years prior to the Participant's Normal Retirement Date."  (Dkt. # 50 Ex. 2, Sched. A, Pt. 2 at 114).

---

[2] The amount of Gail O'Connell's "Normal Retirement Benefit" is not disputed.

-8-

Thus, the terms of the 1999 HH plan expand the availability of the early retirement subsidy to all "Grandfathered Participants," including Gail O'Connell, but limit the manner in which this subsidy can be realized to life annuity payments only.  Because Gail O'Connell elected to receive her benefit in the form of a lump-sum payment, she was not entitled to receive the early retirement subsidy under the terms of the 1999 HH plan.

O'Connell cannot show that Gail O'Connell's lump-sum distributions should have included the early retirement subsidy. O'Connell's claims rest upon the premise that Gail O'Connell was entitled to the early retirement subsidy because it was available to her as a participant in the 1990 version of the HH plan.  No permissible construction, interpretation, or application of the HH plan allows for the result O'Connell wishes to achieve; the HH plan did not and currently does not permit a participant who was not a medical laboratory employee to receive a lump-sum distribution including the early retirement subsidy.  As a result, Gail O'Connell did not lose any rights when she transferred to CCMC, and the HH plan properly calculated the amount of her lump-sum benefit. For this reason, O'Connell's claims against Hartford Hospital and the HH plan fail.

## 2. CCMC Plan

There is no basis for O'Connell's claims against the CCMC plan because the early retirement subsidy was never a feature of

the CCMC plan.  When Gail O'Connell transferred from Hartford Hospital to CCMC, the CHS Transfer Policy provided that she would become a participant in the CCMC plan, permitted her to carry over her years of service and salary earned at the transferor facility, and permitted the Hartford Hospital to calculate her vested pension benefits based upon salary earned at CCMC.  The Transfer Policy, however, did not affect the substantive provisions of the Hartford Hospital or CCMC benefit plans.  (See Dkt. # 54 Ex. D at 7-8 (explaining that, when an employee transfers, the employees become subject to the terms of the new facility's benefit plans)).  Therefore, because the early retirement subsidy was never a feature of the CCMC plan, there is no question that CCMC properly calculated Gail O'Connell's retirement benefit.

O'Connell's claims fail as a matter of law, and defendants' motions must therefore be granted.  Under the terms of either version of both the HH plan and the CCMC plan, Gail O'Connell was not entitled to a lump-sum distribution including the early retirement subsidy.  Further, to the extent O'Connell's claims can be construed as challenging Hartford Hospital's decision to offer the early retirement subsidy to certain employees only, his claims fail because Hartford Hospital's decision regarding plan design is not governed by ERISA.  When designing the terms of a benefit plan, Hartford Hospital does not function as a plan

administrator or fiduciary subject to suit under ERISA.  <u>See</u>
<u>Belade v. ITT Corp.</u>, 909 F.2d 736, 738 (2d Cir. 1990).

### III. CONCLUSION

For the reasons set forth herein, defendants' motions for summary judgment (dkt. #s 47 & 52) are **GRANTED** and plaintiff's motion for summary judgment (dkt. # 57) is **DENIED**.  Judgment shall enter in favor of each defendant on each of plaintiff's claims.  The Clerk of the Court shall close this case.

So ordered this 15th day of November, 2005.


**/s/DJS**

_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**

-11-